As long as the Court is now in session, I give the floor to William E. Holdridge presiding. Please be seated. Thank you. Please call the first case. First case is 512-0102-WC, St. Elizabeth's Hospital v. Workers' Compensation. Counsel, you may proceed. Good morning. May it please the Court. Counsel, my name is Mary Massa, and I represent Sherry Roth in this case. As you well know, this is a case involving both an appeal and a cross appeal. So I'm going to discuss first the issue that I think is most relevant to Ms. Roth, and that has to do with penalties that were assessed by the Commission in this case. As you know, Circuit Court Judge McGlynn threw out those penalties. Now, the purported reason for turning those penalties out has to do with what was first mentioned in the dissent of Commissioner Lindsey in the previous case. How was St. Elizabeth's supposed to know that they were supposed to pay temporary total disability benefits for the period of September 24, 2007 through October 10, 2007? Because there's no evidence of a written demand made upon them, giving them 14 days to say why they didn't pay them. I think that analysis is incorrect for a number of reasons. Ms. Roth was a certified nurse's assistant. She was employed at St. Elizabeth's Hospital in that capacity, and there's no contention that her accident in lifting a patient on a backboard where she injured her back wasn't arising out of the course and scope of her employment. There really wasn't any way for St. Elizabeth's to contend that the injury wasn't caused by this lifting accident either. Can I ask you a question? Yes, sir. When did the employer obtain the IME expert? What date was that? That was October 24, 2007 with Dr. Hereford, Your Honor. And that was after the period in question. That's what I was wondering. Yes. It was after? It was after, yes. And notably in Dr. Hereford's IME report, she did find causation. She did relate it to the accident. She thought it was a muscle strain and thought that there should be light-duty restrictions. But at that point in time, there wasn't really a question from the IME doctor that they had hired as to this initial period of time. They also, Ms. Roth cooperated with her employer, reported the accident right away, was sent to the in-house doctor, Dr. Gorton, who referred her to a physiatrist, Dr. Kahn. Dr. Kahn examined her, and he believed that she should be taken off work. And this was September 24, 2007, the start of that period of time. But a month before they retained the IME expert? Yes, Your Honor. And he wanted to have her undergo some testing and took her off work for two weeks, saw her back on October 8, and then also continued the off-work restrictions. So from September 24, for that two-week period of time, which ends at or around October 8, 2007, she was taken off work by Dr. Kahn, who she was sent to by the company doctor. Well, and also Dr. Kahn sent a report to the company doctor saying he was taking her off work. Absolutely, Your Honor. There was a consultation letter in the record that was directed to Dr. Gorton to that effect. Not only that, Ms. Roth received from her employer FMLA papers, which she took to Dr. Kahn to fill out. Those papers also, we may presume, were referred to St. Elizabeth's with regard to the FMLA claim. And those, the FMLA report, refers to her being, her period of incapacity commencing on or about August 20, 2007, that she was unable to perform work of any kind and that the condition, and had been advised to stay off work. And that, too, went to the employer. And we also know that the employer did own up to liability for the second period of temporary total disability from October 11, 2007 to November 28, 2007. They did, in fact, pay TTD for that period of time. They just didn't pay it for the first period of time. We'll obviously ask opposing counsel the same question. But what was the ostensible reason for not paying it beginning on September 24, 2007? Well, that's a very good question, Your Honor. I am at a loss to get into their mind as to why they didn't pay it. Was there a reason tendered? Was there some ostensible reason given? Not that I'm aware of in the record, Your Honor. In fact, when my client was at trial, was asked on cross-examination about or was asked in direct testimony on this, she testified that she was taken off work in this initial two-week period by Dr. Kahn. And there was no cross-examination to that effect. Nor were there any records put into evidence that said, hey, she really was working during this period of time, so that's why we didn't make these payments. There's nothing to that effect. Well, it's fair to say the employer offered no reason in arbitration. That's what I could glean from the record, Your Honor. I did not try this case. I didn't even write this brief. But from what I could glean from everything, there wasn't anything in the record whatsoever with regard to why they didn't make any payment for this two-week period. And I think that's why the Commission gleaned on that in terms of the penalties, as opposed to the reason that Arbitrator Teague put in her decision for the need for the penalties. So I think Judge McGlynn also made some reference to the fact that she was off work for most of the period post-accident. And while that may have been true in 2008, she worked light duty up until a period in, I believe, in August when her company doctor told her she had to come back at full duty. And so she requested a full-duty work release from Dr. Schultz at that time so she could go back to work. Dr. Schultz expressed in his records and in the deposition that he was concerned that this work she did as a CNA, even under the light-duty conditions, was continuing to exacerbate her back and was preventing her from getting better. That's why he sent her for the functional capacity evaluation. But getting back to the point about Judge McGlynn's reference to her not working during, maybe not working during this period of time, there's also a reference in the St. Elizabeth's Pain Clinic, which again is a part of the hospital, in November of 2007, Dr. Anderson gave her an injection and he noted that she had been off work since November 23, 2007. So everything that I have been able to see in the record indicates that not only was this lady off work from September 24, 2007 until November 28, 2007, but St. Elizabeth's Hospital had all those records. These were their people, these were their representatives who saw her, they had these records. There's no good reason anywhere in the record for them not to have paid temporary total disability benefits for that period of time and I think the Commission's decision in that regard that that should have been paid and it was wrongfully and neglectfully delayed in payment, I think that supports the delay in payment under Section 9L. With regard to Section 19K, this Court has recently stated that those penalties are intended to address situations where the employer deliberately delays payment of compensation under the Act or when the employer's delay in payment is as a result of bad faith or improper purpose. If we can assume that all of the medical treatment that my client received in this particular period of time did not give them any good excuse by way of liability or there not being an accident or there not being causation, it's not there. It's a standard of proof under 19K, is that abuse of discretion? 19K provides for penalties not only where there is a delay, but the delay is deliberate or a result of bad faith. Under what standard do we review that? Abuse of discretion? What is it? I would assume, Your Honor, since that is an interpretation of facts that are in evidence, that it would be a manifest wait, Your Honor. Are you sure about that? No, I am not. But in any event, what is seen in this case is a delay in a period, a short period of time, albeit, but it is a delay that there does not appear to be any good reason for them not to have paid those TTD benefits. And so the Commission's determination that those warranted penalties under Section 19L, 19K, and Section 16 should be affirmed. With regard to Judge McGlynn's decision, I was a little unsure of what he meant by certain TTD benefits. I think the initial period, there shouldn't be any question because, for one thing, the employer paid a big chunk of those TTD benefits that were awarded. But the second period of time that she was taken off of work was in 2009. It was for a period of time in March when she had been continuing to see Dr. Schultz all this period of time. Even after she had asked him to give her a full-duty release, she continued to see him, continued to complain of back problems, continued to receive treatment. And in fact, when she saw him in January, he took her off work, but she continued to work. She continued to work until March of 2009 when she finally called Dr. Schultz's office and said, I just can't do this anymore. I'm just in too much pain. He took her off work. These records also were provided to the employer. In fact, demands were made for payment for the period of time that Dr. Schultz took her off work. The commission shortened that period of time that the arbitrator found. That second period of TTD should go all the way through to the date of the hearing in November, I believe. But based on a manifest way to the evidence in terms of the period of time, I think there weren't any notations made in an office visit she had after July of 2009. So I can understand that this period should be affirmed on a manifest way to the evidence. And I think that Judge McGlynn's finding, if this is the period he's talking about, I believe it should be reversed based on it being contrary to the manifest way to the evidence. I kind of heard him tell what Judge McGlynn did about TTD and prospective medical care. He said it's against the manifest way to the evidence, but he never said he was reversing that. Yeah, so we have to presume he was reversing on that basis. And in terms of the prospective medical that was awarded in this case, Your Honor, I believe since Dr. Schultz's deposition was taken fairly early on in juxtaposition with the actual arbitration hearing, the medical that was awarded was in fact past medical, but it didn't concern anything that Dr. Schultz had actually testified to. But if you review those records, you can see that they all have to do with a condition in her back that Dr. Schultz was convinced her job was continuing to exacerbate. And for that reason, I believe the past medical as well as the prospective treatment, which she testified she had an appointment coming up the following month, that I believe was the only prospective medical treatment that was awarded both by the arbitrator and by the commission on its affirmance of that portion of the decision. So I believe Judge McGlynn's findings with regard to those issues should be reversed as contrary to the manifest way of the evidence. Thank you. Good morning. May it please the Court, Counsel. My name is Brendan Nestor. I represent St. Elizabeth's Hospital in this matter. My client, of course, filed a cross appeal. We're also the appellee in this case. This case may seem kind of a mess procedurally before you. It's actually quite a simple case when you boil it down. This case stems from an erroneous decision issued by arbitrator Jennifer Teague on November, or actually January 19, 2010. The facts and evidence did not support her initial decision. An appeal was taken to the commission. The commission worked as it should to try to rule out or reverse some of those erroneous decisions that arbitrator Teague had made. Again, another appeal was taken as the hospital felt that it still wasn't based on the facts of the case and the law that should be applied to the case. Judge McGlynn did his best to try to right the ship. I was telling my daughter, my 7-year-old daughter last night, I was going over my argument why I would talk to a 7-year-old before bedtime about a work comp argument I have. Don't ask, but I kind of likened it to an onion, peeling away the layers to get to the heart of the matter, the justice that should be applied in this case. While we're peeling away the layers and righting the ship, can you answer the fundamental threshold question? Is there any basis for refusing to pay the TTD that ended up in the penalties and the warrants? What do you have to say about that? Yes, the basis is twofold. One, Ms. Roth testified in arbitration that she had a previous back injury in 2005. She returned to work, however, still suffered from lingering effects from that back injury. Secondly, there was no written demand made for TTD for the period of time at question. That only applies to the 19L, is that not correct? Yes, that is correct. So is it your theory that a written demand from an employee is a condition proceeding to an award of penalties under 19L? Yes, it is. And furthermore, the petitioner has to display a vexatious or unreasonable delay in payment for those penalties. If the employer has actual knowledge that the person is off work as a result of a claimed work-related injury, what is the purpose of the written notice? To clear up any confusion that you may have from that notice, as counsel alluded to, an FMLA claim form was filled out. The hospital did not have direct, certain knowledge that this was a work-related incident. But she reported it to her supervisor, her supervisor sent her to the in-house clinic. The in-house clinic referred her to another doctor who took her off work and reported that back to the in-house clinic. Yes. When she wasn't working, when she reported a work injury, 8B says, if the period of temporary total incapacity exceeds three days, weekly compensation shall be paid beginning on the fourth day. It was still the hospital's contention that the medical evidence that they had, and that's assuming the hospital had that evidence. As you know, the medical records are protected by HIPAA, Physician-Patient Privilege, and just because they're the employers of the hospital doesn't mean they can go look through their employees' medical records. They have to give them permission to look at those records, or the employee has to come forward with those records and say, hey, my physician said I cannot work due to this injury. It's the hospital's contention that those records were not clear that it was due to the injury that was suffered in 2007. Where in the record does the employer present any evidence that any of these reasons you've expressed are why they weren't paying TTV? I cannot speak directly to that, but I think that's reasonable inference that can be drawn. Of course, my client does not have the burden of proving that penalty should be awarded. It's the petitioner's burden that penalty should be awarded. That being said, we believe it's the hospital's contention that first the commission limited those penalties based on the medical evidence that was contained in the record. Judge McGlynn further reduced those penalties based on the facts of the case and the medical evidence and applied the law as it should be applied in this case, and therefore penalties are not justified in this case. One more question. Your position would be that in every workers' compensation case, the employer has no obligation to pay TTV unless there's a written demand made by the employee? For penalties under 19L, the employer has to be put on some sort of notice. For penalties under 19L, of course it's written, but there is a notice requirement, whether it be written, oral, or some fashion. I thought you acknowledged that the employer had noticed that she was off work. They did not. They knew she was being off work, but whether it was noticed that it was causally connected to the alleged work injury in August of 2007 is another issue. It's my contention, the hospital's contention, that those were not connected. Is that supposed to offer a causal connection opinion as soon as the person is off work? I believe that's the doctor's duty to identify why she is missing work and why she should be held off work. If you didn't have any ideas that she was off work by reasonable workers' compensation claim, why did you have her examined by an IME on October 23, 2007? To clear up any doubt that was contained in the previous records. Well, wait a minute now. Hold on. If you had a doubt, that means you were on notice of something. Of course, that there was a potential work-related injury. Well, if there's a potential work-related injury, I understand your argument under 19L. 19L says there has to be a written demand. 19K, no demand required, and you can be penalized for vexatiously refusing to pay. But you can't deny that you at least were on notice that there was a work-related injury when you send the person to an IME. You don't send people to an IME when they stay home from work for a cold, do you? No, you do not. But there was an incident at work that gave rise to the potential need for an IME and an opinion. So what does the Act say? Pay until you find out that there's no basis to pay, doesn't it? Isn't that the theory of the Act? That is the theory of the Act. That's the spirit of the Illinois Workers' Compensation Act. So your argument is sort of reversing that, isn't it? Unless you can prove it to us, we don't pay TTD? Well, the IME did prove it. The IME was in place. We got the IME as it became readily available. You're being penalized for failure to pay TTD before you had the IME from Herford. And the only thing Herford said is that she was at MMI. Recommended she go back to work. Again, it's our position that there was no credible, solid medical evidence or causation opinions to relate her time off work that Dr. Kahn placed her to the incident on August 2010. It was silent. Dr. Gordon put her back to work, said it was simply a mild lumbar strain. Dr. Kahn went above and beyond that for reasons unknown. It was unclear from his record. There was no causation opinion in there that he was taking her off specifically due to the work-related injury. There was other factors that were being considered at that time. That's what necessitated the IME. And therefore, we believe that the Commission and then further by Judge McGlynn got the decision right as far as penalties and fees pursuant to 19L. Are we reviewing McGlynn's decision or do we review the Commission's decision? Yes. Guess what? Yes, you review the Commission's decision. Are there any cases that specifically address the question of whether written demand is a condition for seeing the penalties under 19L? There are several cases. We know that there are several cases that talk about the standards. Yeah, well, no cases that I have found directly on point. It's just the black letter law of 19L that states that written demand must be made under 8A or Section 8B. No, it doesn't say it must be made. I don't think it does. In the case where it says, if the employee has made a written demand, the employer should have 14 days after receipt to set forth in writing the reason for the delay. It doesn't say anywhere you can't award penalties if no written demand is made. That's true, but still the employer has to be on notice or else they're put in a punitive situation. If they have actual knowledge, that's correct. However, four corners of the record do not support that they had actual knowledge that that time period off work was causally connected to the injury on August 10, 2007. So we can see that if the employer has actual knowledge that the employee is claiming to be off on a work-related injury, there's no need for a notice to 19L. Actual knowledge would be synonymous to notice, not written notice, if I'm understanding your question correctly, Your Honor. That being said, I will move on to the issue in our cross-appeal. Again, the decisions of the Commission and Judge McGlynn and, firstly, Arbitrator Teague were erroneous in the fact that this case has been deemed to have her current condition still being in November of 2009 to be causally connected to her work injury of August 2007. As previously stated and contained in the record, Ms. Ross suffered a back injury in 2005. She had not fully recovered, although she had returned to full duty. About a period of two years, she had another injury. Three doctors examined her, found that she suffered from a lumbar strain or exacerbation of the previous injury of 2009. Through physical therapy, several injections, she had relief. She was working up until January of 2009. From July 2008 to January 2009, in full duty. Before that, she was working on light duty or with restrictions. So is your position that the workplace accident did not exacerbate or aggravate the claimant's low back condition? Temporarily aggravated it or exacerbated it, yes. But not to a level where she had to be off work and certainly not to a level where she had to be off work in January of 2009. In fact, Dr. Schultz's opinion, the only contrary opinion in this case where Dr. Schultz disagrees with Dr. Gorton, Dr. Herford, and Dr. Polinsky was that in January 2009, Ms. Ross came in, saw him, complained of an increase in back pain. Dr. Schultz's testimony and his record stated that the ideology of that pain was unknown. It was an increase. There was no way that was related to the incident in August of 2007. Polinsky was your IME, right? Yes. Polinsky and Herford were our IMEs, correct. Didn't Polinsky opine that the claimant's workplace accident aggravated her back problems? Temporarily aggravated it, yes. That had resolved when she was at MMI prior to January 2009 when she had an increase in back pain. Dr. Schultz opined that the ideology was unknown. Therefore, it's clear from the record, the four corners of the record, which is important to consider in deciding whether the previous awards were against the manifest weight of the evidence, that there is no medical evidence. In fact, it's just the opposite. Every piece of medical evidence points to the fact that Ms. Ross' current condition of ill-being in November 2009 was not related to her work injury on August 25, 2007. Thank you. Thank you, counsel. I just want to say one more thing about 19L. It is our position that 19L, which was a result of Public Act 94-277 effective in July of 2005, it rewrote 19L. Some of the same language is still in the new revised 19L. The first sentence, though, about the written demand, it's not phrased in a mandatory way, and it's our position that it doesn't have to be a written demand made before 19L penalties can be awarded. Well, that first sentence was added in 2005. Yes, Your Honor, it was, and I do not know of any cases that have construed this particular statute as at this point in time. And it actually copies a commission rule that states, you know, make a written demand. I think one of the... 14 days to respond as to why. Yeah, and it also talked about a delay of 14 days as a rebuttable presumption. I think that did carry over from the statute. Let me ask a question about that. Has that commission rule ever been interpreted as requiring a written demand? Your Honor, I could not say. With regard to causation, as I said before, this lady went back to work full duty, not because she wanted to, but because the company doctor told her she had to. They had two IMEs in this case. Dr. Polinsky did an IME in August of 2008. He found causation. He said that the restrictions that were noted in the functional capacity evaluation should be honored. And those restrictions were a 20 pound pushing, pulling limit and a 10 pound lifting limit. And then the company doctor tells her she has to go back to full duty. It defies logic for my client to decide she wants to go back to full duty if it weren't for coercion on the part of St. Elizabeth's company doctor telling her she had to. That's why she went back to full duty work. I would like to reference the Court's attention to the Vogel case, Vogel v. Industrial Commission. It's a case that is recognized repeatedly that when the claimant's condition is workened by a work-related accident, a subsequent accident that aggravates the condition does not break the causal chain. We're looking at a situation where a lady goes back to light duty and then full duty work, which continues in the medical records to show exacerbation of her pain complaints to the extent that she can no longer take it anymore when she called Dr. Schultz in March of 2009. It's our contention that causation for her condition of ill-being in 2009 is well-founded, both based on Dr. Schultz's testimony on causation that the work that she was doing was exacerbating this and that the initial thing started with the work accident in March of 2007. Yes, she had a prior work injury in 2005. She had some treatment, physical therapy, for about three months. She went back to work. She worked full duty without any restrictions or accommodations or changes in her work requirements as a CNA. So it's our position that causation was well-founded. It was based on the manifest weight of the evidence, and so we would ask you to affirm the Commission's determination on causation as well. Can I ask you a question? Yes, sir. Why do you think they put that first sentence in 19-L when it doesn't appear in 19-K, it doesn't appear in 16? If they didn't intend written demand to be a condition proceeding to an award under 19-L? I think if you're looking at giving notice, and that's what the idea of this is, let's look at whether this employer had notice at this particular early period of time. They had it all over the place. But then you wouldn't need the first sentence at all. But then you'd write it the same way you wrote 19-K or 16. As a matter of public policy, do we want our employers to say, oh, I'm not going to pay TTD until somebody sends me a demand? No, if they don't do it, they can be subject to 19-K penalties. If they have actual notice of the injury and they don't pay their TTD, no written notice is required for a 19-K penalty. But remember something, a 19-L penalty has much lower standards than a 19-K. It's a delay in payment. And under 19-L, you can get stuck with $10,000 worth of delay penalties for not paying TTD for one day. Yes, Your Honor, but... Because it's $30 a day. It depends on when the petition is brought. So it occurs to me that there has to be a reason for the first sentence. If that first sentence was stated in a mandatory way... If the employee has made a written demand for payments under 8-A or 8-B, the employer shall have 14 days after receipt of the demand set forth in writing the reason for the delay. Now it doesn't say if the employee has made a demand. It says if the employee has made a written demand. Your Honor, I would say the motion for penalties that was served on the defendant in this case, references in paragraph 4 that medical records and reports were provided to the respondent with regard to his medical treatment and inability to return to work, but they have ignored this information. You got the 19-L penalties for failure to pay TTD for the period from September to October of 2007. It wasn't for failure to pay medical bills. It was for failure to pay TTD, wasn't it? But that paragraph, paragraph 4 of our motion, also references the inability to work, and that was contained in the medical records that they had of their own hospital. But is there a written demand for payment of TTD? I would consider a motion for penalties. And when was the motion for penalties filed? I believe it was November 9, 2009, Your Honor. 2009. You got penalties for failure to pay in 2007, and the $30 a day ran from 2007. That's why they got nicked for $10,000. And you know, Your Honor, if we had represented this poor lady back in 2007 after this claim and not in 2008, you know, maybe that would have been sent out much sooner. You're not saying that the motion is the written demand, are you? Well, if a written demand must be made as a condition preceded to Section 19L penalties, I would say that not only the medical records from Dr. Schultz that said this lady's off work for that period of time, but also in our motion, I would say that it is a written demand. Well, if that's the written demand, shouldn't the penalties have run from the date of the filing of the motion instead of in 2007? In terms of when they were due, Your Honor, they were due September 24, 2007. So you can file a motion in 2009, but then claim the 19L penalties all the way back to 2007? That makes no sense. Well, there's nothing in the statute that limits that until after a demand is made, Your Honor. The plain language. If the statute says written demand, how would we get around that? Because of some arguable public policy? It just says if they've made a demand, the employer has 14 days to reply. You're putting a burden on the employer, aren't they, to explain? Yes, Your Honor, to explain, and there was no explanation. The only challenge there is that the employer shall explain why they're not paying. And the employer under Section 19K even has the burden of justifying the delay. 19K is entirely different. There is no written demand requirement in 19K. There's no written demand requirement in 16, and the reason for that is it's a very high standard. You've got to prove that it's unreasonable. They don't have to prove that it's reasonable. You have an initial burden of proving that it's unreasonable. Once you do that, you're entitled to penalties up to 50% of the amount they didn't pay. But 19L is entirely different. That's a delay in payment. And it occurs to me if they've got a written demand requirement and a period of time within which an employer can respond to that written demand requirement, that they didn't intend you to get delayed payments until you made the demand. Now, if you made the demand in 2009 and they didn't respond within 14 days, maybe then the penalty under 19L should run from the date you made the demand or the expiration of the 14 days. But that wouldn't add up to $10,000, not $30 a day. Well, I would say, Your Honor, that this lady gave notice of her work injury the day it happened, the medical records that came in that took her off work during that period of time were in their hands at that period of time. So they had an obligation, they knew of an obligation to pay, and they just didn't. Okay. Thank you, Counsel. Thank you, Your Honor. This matter will be taken under advisement. This position shall issue.